CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

JARED S. BUSZIN (NYBN 5285838)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7200
    FAX: (415) 436-7234
    Jared.Buszin@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 26-CR-00008-YGR |
| Plaintiff, | MEMORANDUM IN SUPPORT OF UNITED STATES' MOTION FOR DETENTION |
| v. | Hearing Date:  January 15, 2026 |
| TONY EUGENE COVINGTON, | Time:  10:30 a.m. |
| Defendant. | Court:  Hon. Nathanel Cousins |

## INTRODUCTION

Defendant Tony Covington, a 27-year-old convicted felon who resides in the Eastern District of California, was arrested by Alameda County Sheriff's deputies on August 20, 2025 on an Alameda County bench warrant.  The warrant arose from his failure to appear for court after picking up a criminal case nine days earlier, when he was arrested after fleeing from deputies in his vehicle, which was later found to contain a loaded Glock magazine containing 16 rounds of ammunition as well as MDMA and marijuana.

After he was arrested on August 20 pursuant to the bench warrant, deputies searched his car. Inside, they found a machinegun equipped with a high-capacity magazine containing 33 rounds of ammunition, a loaded Glock pistol equipped with a magazine containing 15 rounds of ammunition, 45

methamphetamine pills, about 140 grams of marijuana, and a digital scale.  Based on the items that were found, the defendant was charged with additional state crimes and remained in custody until January 4, 2026, when he appears to have been released after making bail.

These August 2025 incidents were only the most recent evincing the defendant's involvement in drug trafficking and his possession of dangerous firearms.  As described in further detail below, the defendant has a long history of trafficking substantial quantities of marijuana across state lines, which has resulted in multiple law enforcement investigations and seizures of (i) more than $150,000 cash, (ii) numerous firearms equipped with loaded high-capacity magazines, and (iii) more than 100 pounds of marijuana.  The defendant's involvement in dangerous criminal activity is further demonstrated by a March 2025 incident in which multiple unidentified individuals armed with guns fired more than 75 rounds at the defendant's house, which was occupied by the defendant and members of his family at the time.

As a result of the August 20 incident described above, the defendant has been charged in a three-count federal indictment with firearms and drug-trafficking offenses.  His sentencing exposure is significant.  The government presently estimates his advisory Guidelines range to be 87-93 months imprisonment.  If convicted, the defendant faces the certainty of a multi-year prison sentence as Count Three charges a violation of 18 U.S.C. § 924(c)(1)(A)(i), which carries a five year mandatory consecutive sentence.  Reflecting the seriousness of the defendant's conduct and the charges, two of the three counts in the indictment carry a presumption in favor of detention.

Here, the defendant cannot overcome the presumption that no condition or combination of conditions will reasonably assure his appearance and the safety of the community.  Accordingly, the government respectfully requests that the Court order the defendant be detained pending trial.

## RELEVANT BACKGROUND

### A.    The Defendant's Relevant Conduct

Around 2:00 in the morning of August 11, 2025, Alameda County Sheriff's deputies attempted to conduct a traffic stop on a white Honda Accord.  The defendant was the driver and sole occupant in the vehicle.  Instead of pulling over, the defendant drove onto the interstate and fled.  Deputies did not pursue the vehicle but were able to successfully deploy a tracking projectile, which enabled deputies to

locate the vehicle soon thereafter and stop it using spike strips.  The defendant was arrested and the ensuing inventory search of his car resulted in the discovery of a loaded Glock magazine containing approximately 16 rounds of live ammunition, as well as 466 grams (gross) of suspected marijuana and 12.6 grams (gross) of suspected MDMA, which a narcotics identification test subsequently confirmed to be MDMA.  The defendant was charged with a felony offense for possessing ammunition as a convicted felon, along with misdemeanor offenses for evading a peace officer and possessing a controlled substance.

Nine days later, on the morning of August 20, 2025, the defendant drove the same white Honda Accord by himself to an Alameda County Sheriff's Office substation to pick up property from the August 11 incident.  After the defendant arrived at the station, a records check was run on his name, which revealed he had an outstanding bench warrant for failure to appear in connection with the case charged for the August 11, 2025 incident.  Sheriff's deputies arrested the defendant on the warrant and initiated a tow of the vehicle after the defendant told them the registered owner (his sister) was not available to pick up the car.  Deputies proceeded to conduct an inventory search of the car.

In the door pocket next to the driver's seat, deputies found an operable digital scale commonly used by drug traffickers to weigh out drugs for sale to customers.  Wedged between the driver's seat and the center console, deputies also located a Glock semiautomatic pistol that had a round in the chamber and was equipped with a full 15-round magazine.  On the front passenger seat, deputies located an open black backpack.  Inside the main pocket of the backpack, there was an unregistered Masterpiece Arms pistol with a 2.5" threaded barrel,[1] which was equipped with a 30-round high capacity magazine that was loaded with 33 rounds of ammunition.  Later testing confirmed that the Masterpiece Arms gun was an operable, fully automatic machinegun.  Inside the front pocket of the black backpack containing the machinegun, deputies found payment cards (two of which bore the defendant's name), $70 cash, and 45 suspected MDMA pills that were later confirmed to contain methamphetamine.  On the back passenger side floorboard of the car, deputies found a gray backpack containing two sandwich bags containing approximately 140 grams of suspected marijuana and a loose round of ammunition.

---

[1] A threaded barrel allows for the attachment of muzzle accessories to the firearm, such as a suppressor (i.e., silencer).

**Seized Glock**    **Seized Machinegun**    **Seized Methamphetamine**

  

After the August 20, 2025 incident, the defendant remained in custody until January 4, 2026, when he appears to have made bail.[2]

### B.    The Defendant's Criminal History

At the time of the conduct described above, the defendant was a felon who had been convicted in May 2022 in Santa Clara County of a felony offense for carrying a loaded firearm in a vehicle, as well as misdemeanor offenses for receipt of stolen property and possession of marijuana for sale.  The defendant also has a prior conviction from March 2021 in San Mateo County for conspiracy.

In addition to the foregoing, the defendant has been the subject of multiple prior law enforcement investigations and/or law enforcement contacts evidencing his involvement in significant drug trafficking activity involving the interstate shipment of controlled substances.

In March 2019, the defendant was contacted by DEA agents at Buffalo Niagara International Airport before he traveled to Los Angeles, after it was determined that a bag he had checked contained tens of thousands of dollars in cash stored in heat-sealed packaging and concealed within clothing.  The defendant admitted he had about $4,000 cash in his carry-on bag, which resulted in a positive alert from

---

[2] While detained at Santa Rita, a search of the defendant's bunk resulted in the discovery of marijuana that he possessed inside the jail, in violation of Penal Code Section 4573.6(A).

a narcotics K-9 unit.  DEA agents ultimately seized approximately $34,400 in suspected drug trafficking proceeds.

Less than six months later, on August 21, 2019, detectives with the Tracy Police Department in California interdicted a suspicious Federal Express package sent from Illinois to the defendant in California.  A narcotics K-9 unit alerted to the package and inside detectives found a jacket concealing $13,000 in U.S. currency, which had a strong odor of marijuana.  Based on the detectives' training and experience, the funds were believed to be payment for high-grade marijuana that had been shipped from California, which was in demand and could be sold at higher prices outside of California.

In July 2020, law enforcement in Alameda County conducted an investigation into the defendant's suspected involvement in criminal activity.  As part of the investigation, law enforcement located substantial social media content from 2019 and 2020 in which the defendant appeared to be marketing marijuana for sale and displaying hundreds of thousands of dollars in apparent proceeds from those illicit sales.  The social media content included comments about opening "routes" to different states, along with multiple references to "Turn Around Gang" or different iterations of that phrase (e.g., "TAG"), which law enforcement knew to be a reference to transporting marijuana from California to other states for sale at higher prices, with the proceeds being sent back to California (i.e., a turnaround).  The defendant's social media accounts also included numerous posts displaying firearms.

In August 2020, law enforcement executed a search warrant at the defendant's residence as part of the Alameda County investigation into his drug trafficking activity.[3]  During the search, law enforcement found among other things (i) approximately 40 pounds of marijuana in a bedroom that appeared to be a packaging center with scales, bags, and vacuum sealers; (ii) approximately $133,000 in cash; and (iii) two loaded firearms, including one equipped with a 30-round magazine that was linked to a San Francisco gang-related attempted murder via NIBIN testing, which was concealed in the closet of the defendant's minor daughter.

---

[3] The August 2020 search warrant operation was conducted jointly with the San Mateo County District Attorney's Office, which was conducting a separate investigation into the defendant and others in connection with an elaborate California Pandemic Employment Development Department scheme believed to have defrauded the state of more than $250,000.  This incident appears to have given rise to the defendant's March 2021 conviction for conspiracy, noted above.

1    In December 2021, while the defendant was on probation out of San Mateo County, North

2 Carolina Highway Patrol conducted a traffic stop of a vehicle driven by the defendant, which had three

3 other occupants. During an ensuing search of the vehicle, officers found approximately 43 kilograms of

4 marijuana in vacuum sealed packaging. The government understands that the defendant is the subject of

5 a non-extraditable warrant out of North Carolina based on this incident.

6    On January 29, 2022, while the defendant was still on probation out of San Mateo County, San

7 Jose police officers conducted a traffic stop on a parked car located within 50 feet of an elementary

8 school. The car was occupied by the defendant, who was in the front passenger seat, and another

9 individual who was in the driver's seat. Before officers activated their lights, the defendant exited the

10 front passenger seat and began walking away. Inside the car, police located a stolen firearm on the front

11 passenger seat, which was equipped with a loaded high-capacity magazine containing 18 rounds of

12 armor piercing ammunition, as well as an unregistered pistol on the front passenger floorboard, which

13 was equipped with a loaded high-capacity magazine containing 24 rounds of ammunition. Inside the

14 trunk of the car, police found a ballistic rifle plate inside a body armor carrier. The vehicle was also

15 found to contain about five pounds of suspected marijuana, $20,000 in cash, a working scale, money

16 ledger, vacuum sealer, and 149 zip-lock containers. This incident resulted in the defendant's May 2022

17 convictions mentioned above.[4]

18    More recently, in March 2025, San Joaquin County Sheriff's deputies responded to the

19 defendant's residence in response to a reported shooting. Investigation reveled several adult males had

20 exited a vehicle bearing a fake license plate that was parked near the defendant's house. The suspects

21 produced firearms and began shooting at the defendant's residence before fleeing toward Oakland.

22 Approximately 78 shell casings were recovered from the scene. When deputies spoke with the

23 defendant, he claimed to not know who had committed the shooting or why it had occurred.

24

25

26    [4] A pretrial records check reveals that the defendant also was arrested in November 2018 and
charged with concealed carry of a weapon in a vehicle. Though the case was ultimately dismissed and
27 details of the underlying incident are presently unknown, the arrest indicates the defendant has had four
law enforcement contacts involving his possession of weapons in vehicles in the past seven years
28 (November 2018, January 2022, and two August 2025 incidents).

**DISCUSSION**

**I.    Legal Standard**

Under the Bail Reform Act of 1984, the Court must detain a defendant before trial without bail where "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community."  18 U.S.C. § 3142(e)(1).  Detention is appropriate where a defendant is either a danger to the community or a flight risk; the government need not prove that both factors are present.  *United States v. Motamedi*, 767 F.2d 1403, 1406 (9th Cir. 1985). A finding that a defendant is a danger to the community must be supported by clear and convincing evidence, but a finding that a defendant is a flight risk need only be supported by a preponderance of the evidence.  *Id.*

"[T]he Bail Reform Act mandates an individualized evaluation guided by the factors articulated in [18 U.S.C.] § 3142(g)."  *United States v. Diaz-Hernandez*, 943 F.3d 1196, 1199 (9th Cir. 2019). Those factors are: (i) the nature and circumstances of the offense charged; (ii) the weight of the evidence against the defendant; (iii) the history and characteristics of the defendant, including the defendant's character, physical and mental condition, family and community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings, as well as whether the crime was committed while the defendant was on probation or parole; and (iv) the nature and seriousness of the danger to any person or to the community that would be posed by the defendant's release.  *See* 18 U.S.C. § 3142(g); *United States v. Winsor*, 785 F.2d 755, 757 (9th Cir. 1986).

Where there is probable cause that a defendant has violated the Controlled Substances Act and faces a maximum of 10 years in prison or more *or* where there is probable cause that a defendant has violated 18 U.S.C. § 924(c), courts apply a rebuttable presumption that no condition or combination of conditions will reasonably assure the defendant's appearance as required and the safety of the community.  *See* 18 U.S.C. § 3142(e)(3)(A), (B).  Under this scheme, the burden of production shifts to the defendant.  *United States v. Hir*, 517 F.3d 1081, 1086 (9th Cir. 2008).  Although the presumption is rebuttable, it is not a "bursting bubble."  *United States v. Jessup*, 757 F.2d 378, 382-83 (1st Cir. 1985) (Breyer, J.), *abrogated on other grounds by United States v. O'Brien*, 895 F.2d 810 (1st Cir. 1990).  In other words, the presumption is not so weak that if a defendant introduces evidence, "the presumption

'bursts' and totally disappears, allowing the judge (or jury) to decide the question without reference to the presumption." *Id.* (further stating that such an approach would "render the presumption virtually meaningless" because a defendant can "always provide the magistrate with *some* reason" (emphasis added)).  Even if the defendant rebuts the presumption, the presumption is not erased; instead, it remains in the case as an evidentiary finding militating against release that is to be weighted along with other relevant factors.  *See United States v. King*, 849 F.2d 485 (11th Cir. 1988); *accord United States v. Ward*, 63 F. Supp. 2d 1203, 1209 (C.D. Cal. 1999) (citing *Jessup*, 757 F.2d at 389).

## II.   ARGUMENT

### A.   The Defendant Faces a Rebuttable Presumption in Favor of Detention

Here, two of the three charges in the indictment subject the defendant to a presumption that no condition or combination of conditions will reasonably assure his appearance as required and the safety of the community.  18 U.S.C. § 3142(e)(3)(A), (B).  First, Count Two charges the defendant with a violation of 21 U.S.C. § 841(a)(1), (b)(1)(C), an offense under the Controlled Substances Act which carries a maximum penalty of more than ten years imprisonment.  Second, Count Three charges him with a violation of 18 U.S.C. § 924(c)(1).  As described below, the defendant cannot overcome this doubly applicable presumption.

### B.   The Defendant Cannot Overcome the Presumption That He Is a Danger to the Community and Presents a Risk of Nonappearance

The defendant's relevant conduct in this case and his criminal history demonstrate why he should be detained, consistent with the applicable presumption.  He has repeatedly committed serious felony offenses while on release and subject to judicial supervision, as evidenced by the August 20 incident giving rise to this case, as well as the December 2021 North Carolina incident and the January 2022 San Jose incident that both occurred while the defendant was on probation.  It also bears reiterating that the August 20 incident occurred while the defendant was not only subject to court supervision but was also the subject of an outstanding bench warrant for failure to appear.

The defendant's broader criminal history further demonstrates that he is a trafficker of significant quantities of controlled substances who has access to substantial amounts of cash along with ties to communities outside the Northern District of California.  His criminal activity plainly involves

extremely dangerous conduct, as shown by his possession of a machinegun on August 20, 2025 along with the gun NIBIN-linked to an attempted murder that was found in his daughter's bedroom in August 2020.  The danger his conduct poses to the community is further reinforced by the targeted shooting of his house in March 2025.

Finally, as noted above, the defendant now faces the prospect of a significant federal sentence based on charges that include a count carrying a mandatory minimum five-year consecutive sentence. The defendant has never spent more than a few months in custody before, and his lengthy sentencing exposure in this case presents him with a very strong incentive to leverage his financial resources and contacts to flee.

<b>CONCLUSION</b>

For the reasons stated above, there is no set of conditions that will reasonably assure the appearance of the defendant at court proceedings or ensure the safety of the community.  The Court should therefore order the defendant detained pending trial.

DATED: January 13, 2026                                        Respectfully submitted,

                                                               CRAIG H. MISSAKIAN
                                                               United States Attorney


                                                               _____/S/_____
                                                               JARED S. BUSZIN
                                                               Assistant United States Attorney