CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

JEFF MITCHELL (CABN 236225)
Chief, Criminal Division

JARED S. BUSZIN (NYBN 5285838)
Assistant United States Attorney

450 Golden Gate Avenue, Box 36055
San Francisco, California 94102-3495
Telephone: (415) 436-7200
FAX: (415) 436-7234
Jared.Buszin@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>TONY EUGENE COVINGTON,<br><br>Defendant. | Case No. 25-CR-008 YGR<br><br>UNITED STATES' SENTENCING MEMORANDUM<br><br>Hearing Date: September 10, 2026<br>Hearing Time: 9:30 a.m.<br>Location: Courtroom 1, 4th Floor<br><br>Hon. Yvonne Gonzalez Rogers |

**INTRODUCTION**

The defendant, Tony Covington, is a drug trafficker with a number of recent felony convictions who was arrested in possession of two firearms, including a machinegun, and distribution amounts of methamphetamine and marijuana. While his offense conduct and criminal history are extremely serious, he has also shown extraordinary acceptance of responsibility in this case and demonstrated an apparent willingness to reform himself, most notably through months of gainful employment that provides valuable services to others.

Based on the record as a whole, and upon consideration of the Guidelines and factors set forth in 18 U.S.C. § 3553(a), the United States respectfully recommends that the Court sentence the defendant to

a 30-month term of imprisonment, to be followed by three years of supervised release subject to the standard conditions and other special conditions proposed by Probation.

## RELEVANT BACKGROUND

### A. The Offense Conduct

In the early morning hours of August 11, 2025, deputies with the Alameda County Sheriff's Office attempted to conduct a traffic stop on the defendant's vehicle. PSR ¶ 39. Instead of pulling over, the defendant fled onto the interstate. *Id.* Deputies did not pursue him after successfully deploying a tracker to his vehicle, and soon thereafter the defendant was located and his vehicle was disabled using spike strips. *Id.* The defendant, who was the sole occupant in the car, was arrested for evading a peace officer and his vehicle was searched before being impounded. *Id.* Inside the car, deputies found a loaded Glock magazine containing 16 rounds of ammunition, 466 grams (gross) of marijuana, and 12.6 grams (gross) of tablets that were later confirmed to contain methamphetamine. *Id.* The defendant was ultimately charged with being a felon in possession of ammunition, evading a police officer, and unlawfully possessing a controlled substance. *Id.*

About nine days later, the defendant drove to an Alameda County Sheriff's Office station to retrieve property that was in his vehicle when he was arrested on August 11, 2025. *Id.* ¶ 10. When he arrived at the station, deputies ran a records check which showed an active felony warrant for a failure to appear in connection with his pending case related to the August 11, 2025 arrest. *Id.* Deputies arrested the defendant on the warrant and proceeded to search his car before it was towed. *Id.* ¶ 11. During their search, deputies found a loaded Glock semiautomatic pistol wedged between the driver's seat and center console. *Id.* On the front passenger seat of the car, deputies found a backpack containing multiple payment cards in the defendant's name. *Id.* Inside the backpack, deputies also found a machinegun equipped with a 30-round magazine that contained 33 rounds of ammunition,[1] as well as 45 tablets containing methamphetamine that weighed approximately 20 grams. *Id.* Elsewhere in the car, deputies found a second backpack that contained about 140 grams (gross) of marijuana, loose ammunition, and containers that appeared to be used to package narcotics for sale. *Id.* ¶ 12. An operable digital scale,

[1] The machinegun had a threaded barrel, which allows for the attachment of muzzle accessories to the firearm, such as a suppressor (i.e., silencer).

commonly used to weigh out narcotics for sale, was located in the pocket of the driver's door. *Id.*

**<u>Seized Glock</u>**



**<u>Seized Machinegun</u>**



**<u>Seized Methamphetamine</u>**




**B. The Defendant's Criminal History**

Since 2019, the defendant has had numerous law enforcement contacts and arrests, several of which resulted in convictions. PSR ¶¶ 33-35, 38-43. Many of these offenses relate to drug distribution and illicit weapons possession, *id.*, the same types of offenses at issue in this case.

In March 2019, the defendant was contacted by DEA agents at Buffalo Niagara International Airport before he traveled to Los Angeles, after it was determined that a bag he had checked contained tens of thousands of dollars in cash stored in heat-sealed packaging and concealed within clothing. *Id.* ¶ 41. The defendant admitted he had about $4,000 cash in his carry-on bag, which resulted in a positive alert from a narcotics K-9 unit. *Id.* DEA agents ultimately seized approximately $34,400 in suspected drug trafficking proceeds. *Id.*

In July 2020, law enforcement in Alameda County conducted an investigation into the defendant's suspected involvement in criminal activity. As part of the investigation, law enforcement located substantial social media content from 2019 and 2020 in which the defendant appeared to be marketing marijuana for sale and displaying hundreds of thousands of dollars in apparent proceeds from those illicit sales. *Id.* ¶ 33. The social media content included comments about opening "routes" to

different states, along with multiple references to "Turn Around Gang" or different iterations of that phrase (e.g., "TAG"), which law enforcement knew to be a reference to transporting marijuana from California to other states for sale at higher prices, with the proceeds being sent back to California (i.e., a turnaround). The defendant's social media accounts also included numerous posts displaying firearms.

In August 2020, law enforcement executed a search warrant at the defendant's residence as part of the Alameda County investigation into his drug trafficking activity. *Id.* During the search, law enforcement found among other things (i) approximately 40 pounds of marijuana in a bedroom that appeared to be a packaging center with scales, bags, and vacuum sealers; (ii) approximately $133,000 in cash; and (iii) two loaded firearms, including one equipped with a 30-round magazine that was concealed in the closet of the defendant's minor daughter. *Id.*

The August 2020 search warrant operation was conducted jointly with the San Mateo County District Attorney's Office, which was conducting a separate investigation into the defendant and others in connection with an elaborate California Pandemic Unemployment Assistance scheme believed to have defrauded the state of more than $250,000. *Id.* The defendant's involvement in the fraud scheme ultimately led to two misdemeanor convictions for conspiracy offenses. *Id.*

In December 2021, while the defendant was on probation out of San Mateo County, North Carolina Highway Patrol conducted a traffic stop of a vehicle driven by the defendant, which had three other occupants. *Id.* ¶ 42. During an ensuing search of the vehicle, officers found approximately 43 kilograms of marijuana in vacuum sealed packaging inside large suitcases. *Id.*

On January 29, 2022, while the defendant was still on probation out of San Mateo County, San Jose police officers conducted a traffic stop on a parked car. *Id.* ¶ 35. The car was occupied by the defendant, who was in the front passenger seat, and another individual who was in the driver's seat. *Id.* Before officers activated their lights, the defendant exited the front passenger seat and began walking away. *Id.* Inside the car, police located a stolen firearm on the front passenger seat, which was equipped with a loaded high-capacity magazine containing 18 rounds of armor piercing ammunition, as well as an unregistered pistol on the front passenger floorboard, which was equipped with a loaded high-capacity magazine containing 24 rounds of ammunition. *Id.* Inside the trunk of the car, police found a ballistic rifle plate inside a body armor carrier. *Id.* The vehicle was also found to contain about five

pounds of suspected marijuana, $20,000 cash, a working scale, a money ledger, a vacuum sealer, and 149 zip-lock containers. *Id.* As a result of this incident, the defendant was ultimately convicted of a felony weapons offense, as well as misdemeanor offenses for receiving stolen property and possessing marijuana for sale. *Id.*

About two weeks after the incident described in the preceding paragraph, the defendant was arrested at SFO on outstanding warrants. *Id.* ¶ 34. At that time, he was found to be in possession of 16 ounces of promethazine hydrochloride with codeine and about $32,400 cash. *Id.* A subsequent review of the defendant's phone revealed messages in which he discussed selling codeine. In July 2026, the defendant was convicted of a felony drug trafficking offense for this incident. *Id.*

**C. Procedural History**

On January 7, 2026, a federal grand jury returned a three-count indictment charging the defendant with firearms and drug trafficking offenses arising from the offense conduct described above. PSR ¶ 1. In March 2026, the Court set a briefing schedule and hearing date for a motion to suppress the defendant anticipated filing in the instant case. Dkt. 13, 14. At the parties' request, the Court thereafter converted the hearing from a motions hearing to a change-of-plea hearing, Dkt. 19, 20, and on May 28, 2026, the defendant pleaded guilty to Counts One and Two of the indictment pursuant to a plea agreement with the government, PSR ¶ 2. Sentencing is scheduled for September 10, 2026.

## SENTENCING GUIDELINES

The defendant's Guidelines calculation is uncontested. The parties and probation agree that the Base Offense Level is 20 pursuant to U.S.S.G. § 2K2.1(a)(4)(B) and a 4-point enhancement applies pursuant to U.S.S.G. § 2K2.1(b)(7)(B) because the defendant possessed a firearm in connection with another felony offense. PSR ¶¶ 21-22. After crediting the defendant for acceptance of responsibility, the Total Offense Level is 21. *Id.* ¶ 30. The defendant's six criminal history points place him in Criminal History Category III. *Id.* ¶ 37. This yields an advisory Guidelines range of 46-57 months imprisonment. *Id.* ¶ 66.

## SENTENCING RECOMMENDATION

**I. Legal Standard**

The Court should impose a sentence that is sufficient, but not greater than necessary, to reflect

the purposes of sentencing that Congress identified in 18 U.S.C. § 3553(a)(2). *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008). The Court should begin by calculating the correct sentencing range under the Guidelines. *Id.* "The guideline range provides not only the starting point for sentencing but the lodestar from which the ultimate sentence must be explained and justified." *Galloway v. United States*, No. 16-71939, 2016 U.S. App. LEXIS 24280, at *16 (9th Cir. Sep. 16, 2016).

After determining the appropriate Guidelines calculation, the Court should then evaluate the sentence for substantive reasonableness in light of the factors set out in Section 3553(a). *Carty*, 520 F.3d at 991-93. As relevant here, the factors the Court must consider include:

(1) The nature and circumstances of the offense and the history and characteristics of the defendant;

(2) The need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(3) The need for the sentence imposed to afford adequate deterrence to criminal conduct;

(4) The need for the sentence imposed to protect the public from further crimes of the defendant;

(5) Any pertinent policy statement issued by the Sentencing Commission and in effect at the time of sentencing; and

(6) The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

## II. Application of Section 3553(a) Factors

In light of the foregoing and upon consideration of the Section 3553(a) factors, as discussed below, the Court should impose a sentence of 30 months' imprisonment, to be followed by 3 years of supervised release subject to the standard conditions and other special conditions proposed by Probation.

### A. Nature and Circumstances of the Offenses

The nature and circumstances of the defendant's offenses merit meaningful punishment. Here, the defendant's relevant conduct includes the possession of two dangerous weapons, including a machinegun ready to fire more than 30 rounds of ammunition, the possession of distribution amounts of methamphetamine and marijuana on two separate occasions, and a flight from law enforcement. As

courts have repeatedly made clear, "drugs and guns are a dangerous combination." *Smith v. United States*, 508 U.S. 223, 240 (1993). The defendant's sentence must account for the gravity of his conduct.

**B. History and Characteristics of the Defendant**

As described above, the defendant's criminal history is troubling and includes numerous instances of serious crimes committed within a relatively recent and short period of time. He is also known to associate with Norteño gang members in the East Bay according to law enforcement.[2] PSR ¶ 15.

At the same time, the defendant's conduct since his federal indictment has been encouraging. He secured gainful employment after his release, PSR ¶ 61, and has performed well in his job, Dkt. 35-1. Although there have been some violations of his conditions of release, they have been relatively minor and none of the violations allege new serious criminal offenses, PSR ¶¶ 5-8, which reflects a change from the defendant's past where he incurred several arrests while under court supervision, as noted above.

The defendant's acceptance of responsibility in this case also stands out. The defendant agreed to plead guilty to two serious offenses, including a federal drug trafficking offense, less than six months after indictment. In doing so, he elected to forego filing a motion to suppress that he had originally planned to file. In his plea agreement, the defendant agreed to jointly recommend a 30-month sentence in a B-agreement, meaning he will not be able to withdraw his plea even if the Court declines to follow the joint recommendation. The defendant also agreed to expeditiously proceed to sentencing. The defendant's actions demonstrate his genuine remorse and willingness to take responsibility for his conduct. The Court should credit that at sentencing.

**C. Deterrence, Promoting Respect for the Law, Protecting the Public, and Providing Just Punishment**

Given the seriousness of the defendant's offense conduct and criminal history, a meaningful

[2] The defendant objects to inclusion of this information in the PSR. *See* Addendum to PSR. Undersigned counsel requested corroborating information from the case agent, who identified a music video posted on YouTube in 2024, which features the defendant and known East Bay Norteños, as an example of the defendant's association with gang members. *See* "TC Don Dada X Lil Ally - 211001 ( Official Music Video )", *available at* http://youtube.com/watch?v=0NV-THJw9H8&list=RD0NV-THJw9H8&start_radio=1.

sentence is necessary to ensure adequate deterrence, promote respect for the law, protect the public, and provide just punishment. Under the facts of this case, a 30-month sentence, followed by three years of supervised release, should be sufficient to adequately account for these considerations.

**D. Avoiding Unwarranted Sentencing Disparities**

JSIN data indicates that, in the last five fiscal years, the average and median custodial sentence imposed for defendants with Guidelines calculations mirroring the defendant's is 46 months, which corresponds to the low-end of the Guidelines. PSR ¶ 84. Here, a custodial sentence of 30 months would account for the mitigating considerations presented in this case and ensure the defendant receives a sentence that is not unfairly disparate from sentences received by other defendants whose offense conduct and criminal history is relatively similar.

**CONCLUSION**

For the foregoing reasons, the government respectfully recommends that the Court impose a sentence of 30 months imprisonment, to be followed by three years of supervised release subject to the standard conditions and other special conditions proposed by Probation.

DATED: September 3, 2026

Respectfully submitted,

CRAIG H. MISSAKIAN
United States Attorney

*/S/*
JARED S. BUSZIN
Assistant United States Attorney